## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCAH KMET | : |
| 330 Jacksonville Road, Apt 9-310 | : |
| Warminster, PA 18974 | : |
| | :    CIVIL ACTION |
| Plaintiff, | : |
| | :    No. _____ |
| v. | : |
| | : |
| BUCKS COUNTY INTERMEDIATE | : |
| UNIT EDUCATION FOUNDATION d/b/a | : |
| BUCKS COUNTY INTERMEDIATE | :    **JURY TRIAL DEMANDED** |
| UNIT #22 | : |
| 705 N. Shady Retreat Road | : |
| Doylestown, PA 18901 | : |
| | : |
| | : |
| Defendant. | : |
| | : |

## CIVIL ACTION COMPLAINT

Plaintiff, Rebeccah Kmet (formerly known as Rebeccah Edelman and hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Plaintiff against Bucks County Intermediate Unit Education Foundation d/b/a Bucks County Intermediate Unit #22 (hereinafter referred to as "Defendant") for violations of for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, et. seq.), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601, et. seq.), and the Pennsylvania Human Relations Act ("PHRA - 43 Pa. C.S. §§ 951 et. seq). [1] Plaintiff asserts, *inter alia*, that Defendant subjected her to unlawful workplace

---

[1]  Plaintiff intends to amend her instant lawsuit to include claims under the PHRA on or about May 16, 2025, once her administrative remedies are fully exhausted with the appropriate administrative agency. Plaintiff dual-filed her Charge of Discrimination on May 16, 2024. Any claims under the PHRA would mirror the instant ADA claims identically.

discrimination, retaliation, failed to accommodate her requests for reasonable accommodations, all culminating in her unlawful termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.     This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

3.     The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's future state claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.     Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult female with an address as set forth above.

7.      Defendant is a Pennsylvania non-profit corporation which was established in 1971 by the Pennsylvania General Assembly to operate as a regional educational service agency.

8.      At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

## FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     On or about September 3, 2019, Defendant hired Plaintiff as a Preschool Early Intervention Paraeducator, Teaching Assistant and/or, Floating Paraeducator and employed her in that capacity through the end of her employment.

11.     Plaintiff suffers from various disabilities and serious medical conditions including, but not limited to; Epilepsy, Diabetes, chronic migraines, and other related health conditions and complications.

12.     As a result of Plaintiff's aforementioned disabilities, she is substantially limited, at times, from performing daily life activities such as managing sleep, managing pain, focusing and paying attention to tasks.

13.     Despite these occasional limitations, Plaintiff was qualified to perform the essential functions of her position(s) with accommodations.

14.     Prior to 2024, Plaintiff utilized what is commonly known as "intermittent" FMLA leave.

15.     Leave under the FMLA **must** be offered in three (3) different ways: (a) intermittently (on a periodic basis, as needed, even as short as 1-hour increments); (b) block leave (for lengthy periods of time); and (c) on a reduced-schedule basis.

16.     Plaintiff needed, and used FMLA, on an intermittent basis from in or about December 2022 through in or about March 2023.

17.     During her employment with Defendant, Plaintiff's primary contact for accommodation requests and leave under the FMLA fell under Defendant's Leave Coordinator, Jill Colonna ("Colonna").

18.     Colonna never communicated well, did not appear to understand certain leave or FMLA requirements, and was often <u>completely</u> unresponsive to requests or inquiries.

19.     Plaintiff nonetheless was required to continue any dialogue with Colonna by Defendant.

20.     On or about December 13, 2023, Plaintiff sent an email asking Colonna about renewing her FMLA paperwork (as she had used it in the past from 2022-2023 – discussed *supra*).

21.     Plaintiff explained to Colonna in her December 13, 2023 email that she was unfortunately having health complications and struggling with her aforementioned disabilities and serious medical conditions, and as a result, needed to renew her FMLA paperwork.

22.     Pursuant to 29 C.F.R. § 825.300 of the FMLA, within five (5) days, an employer is required to provide an employee with FMLA notices, designations, forms, and certifications to prepare or fill out if the employer has potential notice of an FMLA-qualifying health condition that could require absence(s). An employee is also supposed to be "provisionally" designated as using FMLA effective upon notice or such request(s) for FMLA.

23.     Plaintiff was specially asking for FMLA paperwork and notifying Defendant (in particular Colonna) of her need for FMLA leave as of December 13, 2023.

24.     Colonna did not confirm receipt, so Plaintiff sent a friendly e-mail reminder the following day, on or about December 14, 2023, with a subject line "RE: FMLA" stating; "Just want to make sure you received my email and could supply me with the proper paperwork."

25.     Weeks continued to go by with no response or any FMLA paperwork from Colonna, so she emailed Colonna again and left her a voicemail on or about January 3, 2024 stating, "[t]his is my fourth time trying to contact you. I tried to call you over the phone as well but had no success. Could you please provide me with the proper paperwork for FMLA please?"

26.     Finally, on or about January 3, 2024, *22 days after Plaintiff's first request and notification for FMLA paperwork*, Colonna finally responded via email stating, "I am sorry to hear that you are not feeling well."

27.     Colonna provided no explanation for her 3-week delay in responding to Plaintiff's FMLA request and represented that she attached an FMLA form.

28.     Colonna however only attached a "Bucks County Intermediate Unit #22 Employee Request for Leave Form." The form itself said nothing about FMLA (and was not standard FMLA documentation).

29.     Plaintiff, wanting to ensure her need to take leave was preserved, completed the information in the aforesaid form, emailed it back as of January 17, 2024, and in the body of the email sought to confirm: "This would be intermittent like my previous FMLA."

30.     To be clear, starting in December of 2023 through January of 2024, Plaintiff repeatedly requested "intermittent" FMLA from Colonna via numerous emails.

31.     Plaintiff also had multiple phone conversations with Colonna in February 2024 reiterating her requests for intermittent FMLA.

32.     However, Colonna dropped the proverbial ball and never designated Plaintiff as on FMLA intermittent leave effective December 13, 2023, pending FMLA confirmation.

33.     Plaintiff was later prejudiced by Colonna's non-responsiveness, FMLA mishandling, and overall sloppiness because Defendant accused Plaintiff of missing unapproved time off from work in December of 2023 and January of 2024 (which should have been approved as intermittent FMLA leave), all of which also negatively impacted Plaintiff's compensation for such days.

34.     Maria DeSantis ("DeSantis") is a Building Supervisor of Preschool Early Intervention (and was a prior manager of Plaintiff).

35.     By February of 2024, DeSantis instructed Colonna that Plaintiff's usage of "intermittent" FMLA **could not be accommodated**.

36.     Via a phone call, Colonna told Plaintiff that pursuant to conversations with management of Defendant (such as DeSantis), Plaintiff's intermittent usage of FMLA created an undue burden and therefore could not be accommodated.

37.     Defendant clearly stated during this aforesaid call that Plaintiff would not be "accommodated" or "granted" intermittent FMLA leave going forward.

38.     In response to Colonna's phone call, Plaintiff emailed DeSantis on February 22, 2024 stating: "After communicating with Jill Colonna I want to let you know that I will be participating in the makeup day tomorrow (as Plaintiff was now *being required to make up days that she was being denied FMLA*). As I understand you communicated with [Colonna] that **you cannot accommodate my FMLA coming Monday 2/26**."

39.     DeSantis responded to Plaintiff via email on February 22, 2024, confirming she provided "feedback" based upon Plaintiff's "accommodations."

40.     Defendant exhibited a total lack of appreciation or understanding of the difference between "accommodations" (under the ADA) and "FMLA leave." Defendant was using terms under both laws simultaneously/interchangeably without treating Plaintiff's protections under each law differently.

41.     To be clear, while medical leave may be a reasonable accommodation under the ADA, FMLA leave is not an accommodation; rather, it is a protected right to take time off under federal law that is federally protected in 1 of the 3 selected ways discussed above.

42.     (As explained in further detail *infra*) Colonna informed Plaintiff in no uncertain terms that if she could not return to work without needing intermittent FMLA, she could not continue to work in her role.

43.     Colonna went on to state that she was only going to process a full (consecutive or block) FMLA leave, whereby Plaintiff had to go out of work, could not work at all, could not use intermittent FMLA, and would just be deemed by Defendant as on an indefinite leave of absence.

44.     By March 13, 2024, Plaintiff had: (a) emailed with Susan Schecter ("Schecter") (Defendant's Supervisor of Payroll) about payroll questions; and (b) confirmed that per Colonna, Plaintiff had been directed not to come to work.

45.     Separately, on March 13, 2024, Plaintiff emailed Schecter, Colonna, and Karen Sandone ("Sandone" – Defendant's Director of Human Resources) confirming Plaintiff was involuntarily "made to take" "consecutive FMLA" and was seeking clarification(s).

46.     Having gotten no response to her March 13, 2024 email from any management, Plaintiff again emailed her questions two (2) days later on March 15, 2024, to the same people.

47.     Continually trying to use intermittent FMLA and justify her intermittent FMLA needs, by mid-March of 2024, Plaintiff was routinely submitting additional medical documentation to Defendant's management per their request(s).

48.     For example, Plaintiff provided an extremely clear medical note from Jefferson Health (Jefferson Neurology Center City) stating:

> "Rebeccah Edelman is followed at Jefferson Health for diagnoses of autoimmune epilepsy and chronic migraine. Migraines may cause cognitive slowing, fatigue and difficulty focusing and can interfere with the workday when one occurs. Migraines do not occur daily but can have flares for which **intermittent FMLA is suggested.**" (Emphasis added).

49.     By March 15, 2024, Plaintiff had provided supporting medical documentation from her health care provider(s) confirming she merely needed "intermittent FMLA."

50.     However, via email on March 18, 2024, Colonna emailed Plaintiff questions such as: "I think I am a bit confused Rebeccah, are you requesting FMLA?"

51.     Five (5) minutes later on March 18, 2024, Plaintiff again responded to Colonna after her aforesaid email and confirmed yet again: "Yes. I am requesting intermittent FMLA."

52.     By March 19, 2024, Plaintiff had emailed Colonna and other management confirming: "I also believe that you should have all of my paperwork needed for FMLA."

53.     Dealing with Colonna was a proverbial nightmare for Plaintiff and Colonna and Defendant's other management were doing everything in their power to frustrate and impede Plaintiff's requests for intermittent FMLA leave.

54.     By email to Plaintiff, dated March 19, 2024, Colonna stated that she was being scheduled for a ZOOM meeting with DeSantis, Sandone, and her (Colonna) to discuss Plaintiff's

request for intermittent FMLA leave (on March 21, 2024). Colonna wrote: "Keep an eye out for the invite and I'll see you then." Plaintiff did in fact have a ZOOM meeting on March 21, 2024.

55.    Sandone emailed Plaintiff on April 2, 2024, attempting to capture and memorialize the aforesaid meeting (eleven (11) days earlier, since nobody in Defendant had any urgency in dealing with accommodation or health matters) stating:

(a) Plaintiff was only approved for FMLA from 2/25/24 through 3/12/24 but had continued to use unapproved medical days off thereafter;

(b) as of 3/9/24 Plaintiff had "52 days remaining of an FMLA leave;"

(c) Defendant received Plaintiff's request for intermittent FMLA leave;

(d) Plaintiff "could not commit to a schedule and wanted the flexibility to come and go on a day-to-day basis if you experienced symptoms;"

(e) "I advised you this was not a reasonable accommodation since [Defendant] would need to have another staff member assigned to back up your assignment;"

(f) it was made clear Plaintiff could not remain in her current role and could only have her job protected if she took full/block FMLA leave; and

(g) suggested that Plaintiff denied an opportunity to work for a totally different company and that Defendant may be able to arrange to assist her in getting new employment (whereby she would have ceased working for Defendant).

56.    Sandone's email was very troubling as she is/was the Director of Human Resources and was actively denying and interfering with Plaintiff's federally protected right to take FMLA on an intermittent basis.

57.    Sandone actually memorialized Defendant's assertion that Plaintiff could not use intermittent FMLA, unless she committed to a schedule for using intermittent FMLA.

58.     However, many people with disabilities and serious medical conditions (similar to Plaintiff's) cannot predict when they need to use intermittent FMLA – nor are they required to in order to take intermittent FMLA.

59.     Sandone herself was continuing to discuss FMLA leave as a "reasonable accommodation," despite that there is no "reasonable accommodation" analysis under the FMLA (nor is that phrase applicable to the FMLA).

60.     One day after receiving Sandone's April 2, 2024, email, Plaintiff responded via email stating inter alia:

> (a) she had previously worked on an intermittent basis in the past;
>
> (b) she complained it took nearly three (3) weeks for Colonna to respond to her December 13, 2024, request for FMLA paperwork;
>
> (c) the only days Plaintiff was taking off was for FMLA-related reasons and she did not understand why Defendant did not retroactively treat her as on FMLA from December 13, 2023 (when she had initially requested FMLA), but was instead insinuating Plaintiff had attendance concerns; and
>
> (d) Plaintiff was not able to accept a different hire with a different-business partner of Defendant (and a totally different legal entity) because her benefits would have been negatively impacted (as there was a mandatory threshold of hours per week), she would have lost FMLA protections (needed for her health) by going to a different employer, and she would have mandatory hours to work if hired at a new business (which she may have not been able to do every week).

61.     Based on the foregoing, Plaintiff confirmed via email that she had "no other choice but to accept the consecutive leave" because she was not being permitted to continue

working with intermittent FMLA, and she could not accept Defendant's preference to in essence terminate her and see if she could be placed with a totally different employer.

62.     On April 9, 2024, Plaintiff emailed Colonna asking "when my return date is" so Plaintiff understood what was expected of her.

63.     Colonna responded to Plaintiff's April 9, 2024 email questioning: "Have you been cleared full duty? I have not received any Dr's notes clearing you to return."

64.     Colonna thereby confirmed that Plaintiff was only permitted to return to work if she was "cleared full duty" (which is what she told Plaintiff via phone in February 2024 as well) and ignored Plaintiff's question about an expected return date to preserve her job.

65.     On or about April 10, 2024, Plaintiff emailed Colonna again as follows:

> Sorry, one more thing. In thinking this through (which is driving me a bit crazy to be honest), I am just wondering what happens when I am viewed as having no more leave time left? Will I be fired? I am taking this leave because I have no other choice and don't want to get fired. But I have permanent disabilities which require me to miss periodic days during a year when I have a flare up or complication. Yes, sometimes it will be non-scheduled days off. I have always been able to work, I just might need occasional time off. I don't think that will ever change. But it seems per policy, I can't return unless cleared to "full duty" which based on all prior communications means I am representing I won't miss any periodic time. So, for planning, can you give me some insight on how long my job will be held, what happens at the end of my leave allowance, and what if I cannot get a doctor to say I will never have flare ups or need to miss occasional days? I am basically trying to find out if I have to look for another job and won't be able to return at all? Thanks.

66.     Colonna ignored Plaintiff's request on April 9, 2024 about when she had to return from (forced consecutive) FMLA leave and also completely ignored Plaintiff's request for information about why she was not allowed to return to work unless cleared for full duty.

67.     On April 30, 2024, Plaintiff emailed Colonna again **after not hearing back from her for nearly 3 weeks** (her typical pattern of non-responsiveness) stating:

> I never heard back from you about my email several weeks ago. I was questioning if I will ever be brought back to work since no doctor of mine will guarantee I won't miss a single day or partial day in the future for flareups, and the IU isn't letting me return if I need to miss periodic days from work in the future. Obviously, I feel I can work and don't need this indefinite leave. Anyway, I can't stay in limbo forever. It seems there is no place for me at IU anymore, and I have not gotten any answer if I'll ever be returned to work. So, I am just giving you a heads up that I am going to look for another job and consider taking a new position soon with a different employer. If there is anything I should know or any changes about my ability to return, please let me know by the end of this week.

68.     On May 1, 2024, Colonna finally emailed Plaintiff stating: "I know how difficult this must be . . . I will connect with [Sandone] tomorrow when she returns to the office."

69.     On May 2, 2024, Sandone emailed Plaintiff and stated that Defendant cannot "approve any future accommodation requests without an updated physician certification."

70.     Plaintiff was 100% denied usage of intermittent leave under the FMLA and forced on an involuntary, indefinite leave of absence and Defendant outright and blatantly violated many of Plaintiff's rights and entitlements under the FMLA.

71.     However, requests for FMLA can be separately considered as requests for medical accommodations under the ADA.

72.     Defendant denied Plaintiff any semblance of an interactive process under the ADA, at times totally ignored her, and gave no feedback about how Plaintiff could return to work, what her physician would need to confirm for her to return, and told Plaintiff she would only be allowed to return if: (a) she could give an exact schedule of when she may (in the future) have a seizure or migraine so she did not inconvenience Defendant (an impossible undertaking

and illogical and illegal request); or (b) provide a medical certification requiring her to be cleared for "full duty."

73. In light of the foregoing and having been on a forced leave that was indefinite for approximately forty-three (43) days, Plaintiff had no choice but to look for other employment and considered herself to have been constructively discharged.

74. On May 3, 2024, Plaintiff emailed Sandone and Colonna, again, stating:

> Can you please forward this email to any appropriate management. Although I honestly already feel like I have been terminated, I am still in the company system as an employee. To avoid any negative reference issue, I am giving notice that my last day of employment should be considered 5/10/24. I just don't know if notice is required when the company has me on medical leave because I can't work per the company, so I am trying to give it anyway. I am taking a new job so I can resume my career. I have only not been allowed to work because my intermittent FMLA needs are an undue burden per the IU. So please do not hold that against me when I use the IU for a reference in the future for jobs. Fortunately, I believe I have a job opportunity that I can start soon. Lastly, I don't understand what you are asking me Karen. My 3/15 med note said I could return to work if allowed to use intermittent FMLA. I was told intermittent FMLA can't be an accommodation for my job because it was an undue burden. So, I wasn't allowed to work anymore. Because my disabilities are permanent, I can't submit a new certification that says I don't need intermittent FMLA anymore (which was my only accommodation request). Anyway, please let me know if there is anything I need to do paperwork wise during my notice period. Thank you, and I appreciate the past opportunity to work for the IU.

75. On May 3, 2024, Sandone emailed Plaintiff generally stating she "acknowledges [Plaintiff's] notification of intent to separate from employment" . . . her "resignation will be processed to be effective May 10, 2024, with your last day worked being March 22, 2024" . . . "Please note that you have voluntarily chosen to resign, and the organization is accepting your resignation."

76.     Sandone concluded her May 3, 2024 email by stating Plaintiff's FMLA was not "denied due to an 'undue burden'" while thanking Plaintiff for her contributions to Defendant.

77.     Sandone also falsely claimed in her May 3, 2024 email that other medical documentation provided would have required Plaintiff to be out of work 3-4 days per week (up to 8 hours per day).

78.     This still would not have been a legal basis to deny Plaintiff's FMLA (even if true) but this statement was yet another example of perceived disability discrimination.

79.     If Sandone had discussed the matter with Plaintiff, or had any interest in an interactive dialogue, Sandone would have quickly realized her discriminatory perceptions of Plaintiff's disability were completely wrong.

80.     Plaintiff's physician had written in one form that she *might* have episodes 3-4 times per week but elaborated that "focal seizures" typically only last a matter of a "few minutes" to no more than a few hours in severe cases.

81.     For example, for 1-2 minutes while having a focal seizure, Plaintiff might stare blankly into space, experience involuntary blinking, or might make involuntarily noises. Such episodes can happen several times in a week but may not require Plaintiff to take any time off from work, or on other occasions, may require only partial or full days of absence in severe cases.

82.      FMLA regulations expressly mandate that an employee be given FMLA in increments as little as one (1) hour for lateness, breaks, medical flareups at work, or having to leave early as needed.

83.     Simply put, Defendant (a) removed Plaintiff from her prior role in or about January of 2024; (b) required her to make up days or not paid on certain days; (c) forced her out

on an involuntary permanent leave of absence; (d) denied her use of intermittent FMLA; and (e) actually or constructively terminated her because of her actual or perceived health problems, requested accommodations and non-accommodation, FMLA needs, and complaints of mistreatment on account of health or FMLA needs.

**COUNT I**
**<u>Violations of Family and Medical Leave Act ("FMLA")</u>**
**([1] Interference & [2] Retaliation)**

84.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

85.     Plaintiff was a full-time employee who worked for Defendant for more than 1 year within a location that employed at least 50 employees within 75 miles and was an eligible employee for FMLA purposes.

86.     Defendant committed interference and retaliation violations of the FMLA by inter alia: (1) terminating/constructively terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) terminating/constructively terminating Plaintiff and/or subjecting her to a hostile work environment to dissuade Plaintiff from utilizing FMLA leave; (3) considering Plaintiff's FMLA leave needs in making the decision to terminate/constructively terminate her; (4) terminating/constructively terminating Plaintiff to prevent her from taking FMLA-qualifying leave in the future; (5) taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA; (6) counting FMLA-qualifying absences against her under its attendance policy; (6) outright denying her intermittent FMLA leave; (7) placing her on an indefinite medical leave because of her need for intermittent FMLA leave.

**COUNT II**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

87.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

88.    Plaintiff requested reasonable accommodations from Defendant, including but not limited to time off from work to care for and treat for her aforesaid health conditions and disabilities (as discussed in detail *supra*).

89.    Plaintiff was subjected to a hostile work environment following her requests for reasonable medical accommodations because of her actual/perceived disabilities and/or due to her requested accommodations through, *inter alia*: denying her accommodations, refusing to respond to her emails for weeks at a time, refusing to provide her with proper FMLA paperwork for weeks at a time, forcing her on an indefinite medical leave of absence, and mishandling her requests for reasonable accommodations.

90.    Plaintiff was terminated shortly after requesting and/or utilizing reasonable accommodations (i.e. time off for medical reasons).

91.    Defendant refused to engage in any meaningful interactive process with Plaintiff and failed to/refused to reasonably accommodate her.

92.    Plaintiff believes and therefore avers that her known and/or perceived health problems; and/or her record of impairment; was a motivating or determinative factor in her force medical leave, termination, and/or constructive discharge.

93.    Plaintiff also believes and therefore avers that her request for and use of accommodations (which constituted protected activities) was the cause of her forced medical leave, termination and/or constructive discharge.

94.     Plaintiff further believes and avers that she was forced on an indefinite medical leave, terminated and/or constructively discharged as a result of Defendant's refusal to engage in the interactive process and/or accommodate her.

95.     Defendant's unlawful discrimination, retaliation, and failure to accommodate constitutes violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A.      Defendant is to be prohibited from continuing to maintain its illegal policies, practices, or custom(s) of discriminating against employees and are to be ordered to promulgate an effective policy against such discrimination/retaliation/interference and to adhere thereto;

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered the aforesaid unlawful actions at the hands of Defendant until the date of verdict;

C.      Plaintiff is to be awarded punitive or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for their willful, deliberate, malicious and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.     Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By:     _____
Ari R. Karpf, Esq.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
(215) 639-4970 fax
akarpf@karpf-law.com

Dated: October 29, 2024

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |  |
|---|---|---|
| Rebeccah Kmet | : | CIVIL ACTION |
| v. | : | |
|  | : | |
| Bucks County Intermediate Unit Education Foundation d/b/a Bucks County Intermediate Unit #22 | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 10/29/2024 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: ___Defendants place of business_____

---

*RELATED CASE IF ANY:*  Case Number: _____  Judge: _____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*: _____

*B.* *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*: _____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)* _____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KMET, REBECCAH

**(b)** County of Residence of First Listed Plaintiff **Bucks**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

BUCKS COUNTY INTERMEDIATE UNIT EDUCATION FOUNDATION D/B/A BUCKS COUNTY INTERMEDIATE UNIT #22

County of Residence of First Listed Defendant **Bucks**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE  10/29/2024

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____